*Tagged Opinion*

**ORDERED in the Southern District of Florida on February 15, 2019.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

Errol Paul Allan Campbell,                                Case No. 17-25246-LMI

                                                          Chapter 13

        Debtor.
_____/

**MEMORANDUM OPINION OVERRULING THE TRUSTEE'S OBJECTIONS TO
CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN[1]**

　　　　This matter came before the Court on January 14, 2019 on the Debtor's Second Amended Chapter 13 Plan (ECF #35) (the "Plan") and the Chapter 13 Trustee's Memorandum of Law in Opposition of Confirmation of the Plan (ECF #52) (the "Objection to Confirmation"). The Court has considered the arguments of counsel both during the hearing and in their respective

---

[1] The Court ruled on this matter on January 14, 2019 after hearing oral argument. Subsequently, the Court determined that the issues presented in this case were novel and warranted a written opinion. This Memorandum Opinion is the Court's bench ruling, with some "clean up" and recitation of relevant facts, but there are no substantive changes from the oral ruling.

1

memoranda of law[2]. Based on all the foregoing, the Court overrules the Trustee's Objection to Confirmation.

## Facts and Procedural History

Errol Paul Allan Campbell (the "Debtor") filed this Chapter 13 bankruptcy on December 22, 2017. The Debtor resides in his homestead property with his non-filing spouse and three minor children. The non-filing spouse provides the only source of income to the Debtor's family since the Debtor's prior business failed more than a year ago. The non-filing spouse's income will be the sole source of funding for the Plan. The Debtor and his non-filing spouse jointly own their homestead property as tenants by the entireties ("TBE"). The Debtor and his non-filing spouse also own 6 parcels of vacant land (the "Parcels") in Marion County, Florida as TBE, free and clear of any liens, which parcels are valued at $102,515.00. The Debtor claimed the Parcels as exempt on his Schedule C as TBE property. The non-filing spouse pays $167.83 per month for the ad valorem taxes on the Parcels.

The Debtor completed the B122C-2 Chapter 13 Calculation of Your Disposable Income form (ECF #4) (the "Disposable Income Form"), deducting $167.83 per month (the "Deduction") on Line 33d[3] for the payment that the non-filing spouse makes for the ad valorem taxes for the Parcels. With this Deduction, the Debtor has $349.77 per month to pay to his creditors over the 60-month term of the Plan.

In the Objection to Confirmation, the Chapter 13 Trustee argues that the Deduction is improper because (a) the Deduction is a household expense; (b) the Deduction is an unnecessary expense; (c) the Deduction is inappropriate regardless if it is taken as a debt secured by an interest

---

[2] The Debtor filed two memoranda of law in support of confirmation (ECF ##48, 92).
[3] Line 33d of the Disposable Income Form is a deduction line reserved for debts secured by an interest in property.

in property on Line 33d of the Disposable Income Form or as a marital adjustment (the "Marital Adjustment") on Line 13 of the B122C-1Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period form (ECF #3) (the "CMI Form"); and, finally, (d) the use of the Deduction shows that the Plan was proposed in bad faith. The Debtor's Plan currently proposes to pay unsecured creditors a total of $14,990.80 over the life of the Plan. If the Trustee is correct, then the unsecured creditors would receive a total of $25,060.60 over the life of the Plan.

The Debtor argues that the Plan is confirmable and the payment of the ad valorem taxes is not a household expense and therefore may be properly deducted from the calculation of current monthly income. The Debtor further argues that it doesn't matter whether the Deduction is treated as a secured obligation on the Disposable Income Form or as a Marital Adjustment on the CMI Form because either will result in the same calculation of current monthly income. Finally, the Debtor argues that, because the Deduction is appropriate, his Plan was not proposed in bad faith.

## **Legal Analysis**

The ultimate question for the Court is whether the Debtor's Plan should be confirmed without increasing the dividend to unsecured creditors. The answer lies in the resolution of the two issues identified by the Debtor and the Trustee. First, the Court must determine whether the ad valorem taxes are a household expense. Second, if the answer is "no", the Court must decide whether the Debtor may deduct the ad valorem taxes as a payment of an obligation secured by real property.

1. The Ad Valorem Taxes are not a Household Expense and are Properly Deducted as Part of the Marital Adjustment

11 U.S.C. §101(10A) defines current monthly income ("CMI") as "the average monthly income from all sources that the debtor receives…; and includes any amount paid by any entity

other than the debtor …on a regular basis for the household expenses of the debtor or the debtor's dependents …." 11 U.S.C. §101(10A)(A) and (B).  So, the income of the Debtor's non-filing spouse is included in calculating the Debtor's CMI to the extent her income is used on a regular basis for household expenses. "[B]ased upon the explicit language of section 101(10A), current monthly income does not include all the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income." *In re Quarterman*, 342 BR 647, 651 (Bankr. M.D. Fla. 20016).

The term "household expense" is not defined in the Bankruptcy Code.  During oral argument, the Trustee took the position that the term "household expense" should have a broad meaning and should include any expense that benefits any member of the household.  Since, the Trustee argues, the Debtor benefits from his spouse paying the ad valorem taxes on the exempt parcels, those payments are household expenses and must be included in the calculation of CMI.

The Debtor argues that the Trustee's interpretation of "household expense" is far too broad and argues that this Court should adopt the court's definition of household expense in *In re Gregory*, 2011 WL 5902884 (Bankr. E.D. N.C. 2011).  The issue before the *Gregory* court was whether the money that a non-filing spouse spent on a regular basis for the upkeep of the former residence was considered a "household expense" of a debtor.[4]    The *Gregory* court held

> the ordinary, contemporary, and common meaning of "household" only includes one's primary residence and those who live within that household. Here, the expenses related to the former residence are not attributable to any expenses related to the debtor's primary residence. If the non-filing spouse were to stop making the $1,628.00 payment related to the former residence, it would not affect the day-to-day functioning of the debtor's household. The statute could have been written

---

[4] In *Gregory,* the debtor and his family moved to a new home, while listing their former home for sale.  The non-filing spouse paid the carrying costs of the former residence from her income.  The *Gregory* court looked to the ordinary definition of "household" in Black's Law Dictionary to guide its understanding, which defined "household" as "those who dwell under the same roof and compose a family". *Black's Law Dictionary* (9th ed.2009).

more broadly to capture as income any payment by a non-debtor made for the benefit of the debtor, but the actual language is more narrow.

*Id*. at *3.

Are the taxes a household expense or an expense of the household? The Court finds that it makes no difference. The Bankruptcy Code leaves the definition of "household expense" open to allow bankruptcy courts to make important fact-based decisions about the calculation of CMI. However, the Bankruptcy Code provides guidance in the provisions that address the deductions a debtor can take from his or her CMI that drive the ultimate sum available for distribution to creditors under a chapter 13 plan. 11 U.S.C. §1325(b)(2) considers appropriate deductions from CMI to include expenses associated with the "maintenance and support of the debtor or a dependent of the debtor". Section 1325(b)(3) directs that subsections (A) and (B) of 11 U.S.C. §707(b)(2) should be read in conjunction with section 1325(b)(2)[5]. The allowable expenses in section 707(b)(2)(ii)[6] further illustrate that, in considering which expenses should be deducted from a debtor's CMI, Congress focused on those expenses necessary to protect the health and safety of the family – including health insurance and disability insurance expenses, expenses associated with the "care and support of an elderly, chronically ill, or disabled household member",

---

[5] Section 1325(b)(2) defines disposable income as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended –
    (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; …and
    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

[6] Subsection (I) states "[s]uch expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor….In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence". Subsection (II) includes "actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent)". Subsection (IV) includes "actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school". Subsection (V) includes expenses for "housing and utilities".

housing, utilities, food, and safety of the home. Importantly, section 707(b)(2) specifically excludes the payment of debt as an appropriate deduction. Informed by these statutory signposts, the Court finds that "household expenses" are those relating to expenses to maintain the home and feed, clothe and protect the family living in the home. Turning to the *Gregory* court's analysis, if the Debtor's non-filing spouse were to stop paying the ad valorem taxes, the nonpayment would not affect the Debtor's daily household functioning since payment of those ad valorem taxes does not impact the health, safety, preservation of shelter, etc. of the Debtor or his dependents. Thus, the Court finds that the ad valorem taxes are not a household expense.

Because the Court has determined that the taxes are not a household expense and it is undisputed that the Debtor's non-filing spouse pays the taxes regularly, the proper place to take the Deduction is on the marital adjustment line.[7]

2. The Deduction is Not Indicative of Bad Faith

The Trustee, relying on *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983), argues that the Debtor's deduction of the ad valorem taxes is indicative of bad faith. In *Kitchens,* the Eleventh Circuit held that when determining a debtor's good faith in proposing a Chapter 13 plan

> a bankruptcy court must consider but not be limited to the following: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee.

---

[7] The Debtor argued, alternatively, that the ad valorem taxes could be deducted as a "debt[] that [is] secured by an interest in property that you own" on Line 33d of the Disposable Income Form. However, although the payments of the ad valorem taxes are payments secured by real property, since the Debtor doesn't pay the ad valorem taxes the Debtor cannot deduct the payments on his Disposable Income Form.

6

*Id.* at 888-89.

The Trustee argues that the Debtor's bad faith is reflected in factor two of the *Kitchens* test – that the Debtor has inflated his living expenses to avoid paying additional money to his creditors through the Plan. The Debtor's use of all available deductions is not indicative of bad faith, and because the Court finds the Deduction was proper, the Trustee's argument is overruled. More importantly however, the Court finds that the Debtor asserted a good faith argument regarding the Deduction. Just because an argument may be wrong, it doesn't mean it was made in bad faith. Accordingly, the Court finds that the Debtor proposed the Plan in good faith.

## **Order**

For the foregoing reasons, it is ordered as follows:

1. The Trustee's Objection to Confirmation is Overruled.
2. The Debtor may take the Deduction.
3. The Deduction must be taken on the marital adjustment line and the Debtor shall amend his CMI Form accordingly.

# # #

Copies provided to:

Laila Gonzalez, Esq.

Amy Carrington, Esq.

*Attorney Gonzalez shall serve a copy of the signed order on all parties and file a certificate of service.*